IN the INTEREST OF STEPHEN T., a person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

STEPHEN T., Defendant-Appellant.

Court of Appeals

*No. 00–3045. Submitted on briefs October 17, 2001.—Decided December 5, 2001.*

2002 WI App 3

(Also reported in 643 N.W.2d 151.)

30

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Raymond M. Dall'Osto* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Phillip A. Koss*, district attorney, and *Diane M. Resch*, assistant district attorney.

Before Nettesheim, P.J., Brown and Anderson, JJ.[1]

¶ 1. BROWN, J. Stephen T. appeals from an order adjudicating him as delinquent based upon a finding by the trial court[2] that he committed first-degree sexual assault contrary to WIS. STAT. §§ 948.02(1) and 939.05(1) during a children's game of "capture the flag." Stephen also appeals from the order denying his postdisposition motion to vacate the delinquency adjudication. Stephen particularly argues that the trial court erred in refusing to admit his evidence that he was not mature enough to form the criminal intent underlying the sexual assault charge. We determine that evidence of sexual immaturity is relevant as a matter of law to a preadolescent's affirmative defense that he or she is not capable of having sexual contact with the purpose of becoming sexually aroused or

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to WIS. STAT. § 809.41(3) (1999–2000). All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] The right to a trial by jury in juvenile delinquency cases has been eliminated by the legislature. *See State v. Hezzie R.*, 219 Wis. 2d 848, 859, 580 N.W.2d 660 (1998).

31

gratified. The trial court erred in excluding this evidence and because this ruling was not harmless, we reverse the orders. Ordinarily we would remand for a new trial; however, in this case Stephen has already served the disposition which the trial court deemed was in the best interests of Stephen and the public. In our view, remand to the trial court for further proceedings would be futile, even if we have authority to do so. Therefore, we order that the case be dismissed without remand, with the instruction that Stephen's DNA sample on file be removed or destroyed.

## Factual Background

¶ 2.　Ten-year-old Stephen was charged with having sexual contact with two girls younger than him, one incident in August 1996 involving six-year-old S.R.H. and one incident in May 1997 involving seven-year-old C.A.M. The 1996 allegations arose out of a children's game of "truth or dare" that involved Stephen, his sisters, S.R.H. and other children who lived in the neighborhood. The 1997 allegations arose out of a children's game of "capture the flag," again involving Stephen, his sisters, S.R.H., C.A.M. and other children from the subdivision. The games were played outdoors in the backyards of various neighbors.

¶ 3.　At trial, S.R.H. testified that she and some neighborhood children were involved in a game of "war."[3] During this game, S.R.H. reported that Stephen made a rule that the girls had to pull up their shirts in order to get out of jail. C.A.M. also testified that Stephen had made up the rule that the girls had to expose their breasts when they were captured. C.A.M.

---

[3] During the trial, the children referred to this game both as "war" and "capture the flag."

further testified that Stephen had touched one of her breasts during the "war" game. Stephen denied ever touching C.A.M.

¶ 4. The trial court found Stephen guilty of touching C.A.M.'s breast with his hand during the "capture the flag" game.[4] With respect to the issue of intent, the trial court found that "the only logical reason" Stephen would have had contact with the girls' private parts was for sexual gratification. "That's not to say he could get it or not. I don't know."

¶ 5. The trial court further reasoned that since Stephen had previously been exposed to materials of a sexual nature, Stephen "was thinking along the terms exploratory . . . or trying to get this excitement. As I say, I don't know whether he actually got excited by it. So his purpose was to obtain sexual gratification." The trial court concluded that based on Stephen's particular age, it did not make sense that he had sexually assaulted the girls in order to degrade or humiliate them.[5]

¶ 6. At the March 24, 1998 disposition hearing, the trial court ordered that Stephen be placed on one-year supervision, with placement to remain in his home, and with several conditions including psychological counseling, restitution and community service. The

---

[4] The trial court also found Stephen guilty of the counts against S.R.H. However, at the subsequent disposition hearing, the court concluded that in light of newly discovered evidence pertaining to S.R.H., it could not find Stephen guilty of first-degree sexual assault beyond a reasonable doubt. Therefore, this appeal concerns only the allegations of sexual assault involving C.A.M.

[5] Although these findings were made in the context of the allegations involving S.R.H., the record makes clear that the court's comments pertain to the incident involving C.A.M. as well.

trial court also ordered Stephen to provide a DNA sample and to register as a sex offender.

¶ 7. Stephen subsequently filed a motion and briefs urging the court to consider a stay of the sex offender registration and DNA testing requirements in light of the passage of 1997 Wis. Act 130. The trial judge held two hearings on the motion, ultimately ruling that while it did not want to order sex offender registration for Stephen, it understood that the statute requiring mandatory registration gave the court no discretion to do otherwise. The trial judge also concluded that 1997 Wis. Act 130, which allows judges to exercise discretion under the sex offender registration law, did not apply to Stephen because the legislation is substantive and therefore prospective in application. The court ordered a stay of the sex offender registration pending appeal, but did not stay the DNA testing.

¶ 8. Stephen then filed a motion for postdisposition relief, alleging that the State failed to prove beyond a reasonable doubt that he touched the breast of C.A.M. with the specific intent of sexual arousal or gratification. He also claimed the performance of his trial counsel was defective for not investigating Stephen's sexual and psychological maturity prior to trial and not presenting expert testimony that a child of Stephen's age and physical development could not form the same intent to become sexually aroused or gratified as an adult. The trial court extended the dispositional order to March 24, 2000, and scheduled a *Machner* [6] hearing for August 24, 2000.

¶ 9. At the *Machner* hearing, the State argued that the trial court had lost jurisdiction because the

---

[6] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

dispositional order had expired. The trial court agreed with the State's position but decided to hold the hearing in order to provide a complete record on appeal. The State then stipulated to the evidentiary submissions offered by the defense counsel. After reviewing the affidavits of Drs. Dean Tomasello and David Taylor, and hearing the testimony of Dr. Charles Lodl on whether prepubescent ten-year-olds have the same capacity to become sexually aroused or gratified as adults, the trial court denied Stephen's motion to vacate the delinquency finding.

### *Discussion*

■

¶ 10. As a threshold issue the State argues that this appeal is moot because the trial court lacked jurisdiction to consider Stephen's postdisposition motions after the dispositional order expired. *See Sallie T. v. Milwaukee County DHHS*, 219 Wis. 2d 296, 303–04, 581 N.W.2d 182 (1998). In *Sallie T.*, however, the supreme court held that even if mootness exists because of the expiration of the dispositional order during the pendency of postdisposition motions and appeal, the appellate court "will reach issues of 'great public concern' " or "cases where 'the precise situation arises so frequently that a definitive decision is essential to guide the trial courts.' " *Id.* at 304 (citations omitted). The court then ruled that the trial court had erred by applying an improper presumption that a parent's compliance with a dispositional CHIPS order is dispositive of the child's best interests. *Id.* at 311. Nonetheless, the court was compelled to uphold the appellate court's affirmance of the trial court decision based on the jurisdictional issue: "We cannot remand for further proceedings consistent with this opinion" because the

trial court "lost its competence to adjudicate matters concerning [the child]." *Id.* at 311–12.

¶ 11. We are not persuaded that this appeal is moot. Stephen's DNA is on file pursuant to court order and we are asked to determine whether he must also register as a sex offender; these are controversies that survive the expiration of the dispositional order. Therefore, our judgment in this matter will have a practical legal effect upon a real party to an existing controversy. *See State ex rel. La Crosse Tribune v. Circuit Court for La Crosse County*, 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983) (a moot case is one which can have no practical legal effect on an existing controversy). However, assuming arguendo that the State is correct regarding mootness, this case presents both characteristics described in *Sallie T.* The main issue Stephen raises on appeal—whether a ten-year-old may be inferred to possess the same specific intent to become sexually aroused or gratified as an adolescent or adult—is an issue of great public importance that is likely to resurface whenever Wisconsin's revised juvenile delinquency code is applied to preadolescents alleged to have had sexual contact with other children. We now address the merits of the legal question presented.

¶ 12. The crux of this case is whether the trial court erred as a matter of law by excluding expert testimony and other evidentiary submissions regarding Stephen's psychosexual maturity as irrelevant to the specific intent element of the charge of sexual assault. "Expert testimony is admissible only if it is relevant," *State v. Pittman*, 174 Wis. 2d 255, 267, 496 N.W.2d 74 (1993), and if it will assist the trier of fact to understand the evidence or to determine a fact in issue. WIS.

36

STAT. § 907.02. Whether expert evidence is relevant and whether the evidence will assist the trier of fact are discretionary decisions. *State v. Ross*, 203 Wis. 2d 66, 80, 552 N.W.2d 428 (Ct. App. 1996). We affirm a trial court's discretionary ruling if it is supported by a logical rationale, is based on facts of record and involves no error of law. *Shawn B.N. v. State*, 173 Wis. 2d 343, 367, 497 N.W.2d 141 (Ct. App. 1992).

■■■■

¶ 13. We begin with the premise that due process requires the State to prove beyond a reasonable doubt every element necessary to constitute the crime charged. *State v. Krueger*, 2001 WI App 14, ¶ 10, 240 Wis. 2d 644, 623 N.W.2d 211. Intent is a fact to be proved like any other. *See Winburn v. State*, 32 Wis. 2d 152, 165, 145 N.W.2d 178 (1966). "A petition based on a violation that requires criminal intent cannot result in a finding of delinquency when the conduct was either unintended or . . . there was a failure to form the requisite intent." *Id.* In a prosecution for sexual assault, the State must prove as an element of the crime that the perpetrator had the specific intent to touch the victim for the purpose of sexual arousal or gratification. *State v. Nye*, 100 Wis. 2d 398, 403, 302 N.W.2d 83 (Ct. App.), *aff'd*, 105 Wis. 2d 63, 312 N.W.2d 826 (1981). Therefore, in this case, the State was required to prove beyond a reasonable doubt that Stephen not only intended to touch C.A.M.'s breast, but that he did so with the intent to become sexually aroused or gratified. *See* WIS. STAT. § 948.01(5)(a).

■■■■

¶ 14. We recognize that the State is allowed to prove intent by inference from the defendant's conduct and from the general circumstances of the case. *State v. Drusch*, 139 Wis. 2d 312, 326, 407 N.W.2d 328 (Ct. App.

1987). The State was therefore entitled to argue for an inference from the facts that Stephen was capable of having sexual contact for the purpose of sexual arousal or gratification. The facts the State relied upon included Stephen's exposure to media of a sexual nature and the sexual contact itself. As the prosecutor argued during closing statements: "[H]is curiosity, having seen the Playboy magazines, trying to make out the things on the Playboy channel, describing the body parts or the acts. . . . Stevie is a sexual being. All of us are from birth forward. Stevie was acting on that sexual arousal and sexual desire. He just is too young, and he did not have a willing partner who was old enough to consent." In response to the defense argument that the circumstances of the children's game belied any criminal intent, the prosecutor opined that "[t]his is just as wrong as an adult playing these games with little kids." She further urged the court not to entertain the "slippery slope defense argument" that requires some proof of sexual maturity on the part of the perpetrator before liability for sexual assault can be established.

¶ 15. In its decision, the trial court concurred with the views of the State. "I have no reason, again, to doubt [C.A.M.] that Stephen touched her on the bare breast, and the only logical conclusion is that . . . he did so for purposes of sexual gratification. . . . He wanted to do what I think he'd seen on programs."

¶ 16. We agree that the statute does not require the State to offer proof of a defendant's sexual maturity in order to secure a conviction of sexual assault. We further agree with the State and the trial court that the inference of intent drawn from these facts was reasonable. We part ways, however, on whether expert testimony of Stephen's sexual and psychological immaturity

is relevant as an affirmative defense to rebut this inference. The trial court rejected introduction of this evidence, both at trial and at the *Machner* hearing, as irrelevant as a matter of law.

¶ 17. For example, at trial, defense counsel had Dr. Taylor testify in an offer of proof to show what prepubescent would mean with respect to Stephen's ability to form the intent to become aroused. Dr. Taylor testified that Stephen was prepubertal at an examination in 1996. On cross-examination, he testified that prepubertal children and even infants can be sexually aroused or gratified and that it was common for children to participate in sexual play. Dr. Taylor also testified that while sexual arousal occurs in prepubescent children, "it does not mean the same thing as it does to a post-adolescent." The trial court rejected this offer of proof, ruling that "I thought at first his testimony was that this child could not become sexually gratified. But he can. Therefore, it has no relevance, the fact that he's prepubescent."

¶ 18. At the *Machner* hearing, Stephen's counsel more fully developed the relevance of Stephen's prepubescent sexual immaturity to the formation of intent in his sexual conduct. Counsel offered the affidavits of two doctors who both placed Stephen at stage one of the Tanner scale of maturity.[7] Dr. Lodl testified that a child at Tanner stage one does not have the same erotic sense, thoughts and capacities that an adult or post-adolescent has when the child engages in sexual behavior. In particular, according to Dr. Lodl, a ten-year-old child has not developed the capacity to be sexually

---

[7] The Tanner stages of maturity are known to pediatricians and physicians as standards for assessing pubertal development.

aroused or gratified or to seek out sexual gratification with the intent prohibited under the criminal law. Dr. Lodl also pointed to psychological studies showing that the kind of touching Stephen was alleged to have committed with C.A.M. is common and may occur in 12% to 40% of boys ages seven to twelve. Again, however, the trial court rejected this offer of proof, finding no distinction in the law with respect to a child's intent to become aroused and an adult's intent to seek arousal.

¶ 19. The trial court's conclusion echoed the sentiments of the prosecutor, who argued that the law does not distinguish between childhood sexual exploration and intent to have sexual contact for purposes of sexual arousal: "Was the touching done out of curiosity or prepubescent exploration, like playing doctor, or was it just goofy child's play, with the participants not realizing the sexual or legal import of such? To me that's all one and the same. That's sexual curiosity; that's acting with that intent."

■■

¶ 20. We reject this line of reasoning. We do not agree that the law "criminalizes"[8] sexual contact between children on the basis that they are "sexual beings" capable of seeking out sexual gratification. Nor

---

[8] We appreciate the fact that an adjudication of delinquency is not a conviction of a crime. WIS. STAT. § 938.35(1). Nonetheless, the juvenile justice system takes on the character of "crime and punishment" because of the consequences of the juvenile disposition which may include social stigma, dissemination of juvenile records to school and law enforcement authorities, and removal from the home. *See Winburn v. State*, 32 Wis. 2d 152, 161–63, 145 N.W.2d 178 (1966). The "crime and punishment" character of the disposition is magnified when sex offender registration is required.

do we believe that "goofy child's play" or "exploration" is within the parameters of first-degree sexual assault. To the contrary, the law "criminalizes" a child's sexual contact with another child only when the perpetrator possesses the intent to become sexually aroused in a manner that is *inconsistent* with childhood behavior. In other words, it "criminalizes" children when they behave like adults, not when they behave in a manner normative to their age. This is why we determine that Stephen's theory of defense was eminently reasonable as a means to rebut the inference established by the State. The essence of his theory was that he was at a level of psychosexual development where he did not experience sexual arousal or gratification in the same manner as adults or adolescents and, therefore, his intent was not criminal.

¶ 21. Based on our understanding of criminal intent, we determine that the expert testimony and other evidentiary submissions were highly relevant to Stephen's theory of defense.[9] The trial court rejected the submissions based on the mistaken belief that as long as Stephen intended to become sexually aroused, he "fit[] in the same gambit as adults." We conclude that the trial court's discretionary ruling was in error. Moreover, because the erroneous ruling deprived Stephen of

[9] Stephen argues that his trial counsel was ineffective for failing to bring to the court's attention the Tanner standards of assessment and other medical and psychological proofs. We appreciate that his postconviction counsel provided more informed experts to support his theory of defense that in view of his immaturity he could not intend to become sexually aroused or gratified. Based on our review of the record, however, we are not convinced that trial counsel's performance was deficient.

the opportunity to present an affirmative defense, we determine that the error was not harmless.

¶ 22. We now address the appropriate remedy in this case in light of the fact that Stephen has already completed the terms of the dispositional order and the order has expired. We bear in mind that the paramount consideration in juvenile proceedings has always been the welfare of the juvenile. *D.H. v. State*, 76 Wis. 2d 286, 304 n.12, 251 N.W.2d 196 (1977). The express intent of the current version of the juvenile justice code is to "protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively." WIS. STAT. § 938.01(2). In addition to protection of the public and accountability, the statute seeks to provide care and treatment of a juvenile offender's needs. Sec. 938.01(2)(f).

¶ 23. In this instance, the trial court determined that the most effective disposition was to place Stephen on one-year supervision, to make restitution, to perform community service, and to attend counseling. Apparently, he has complied with all of these requirements. We conclude that the public interest in protection and accountability and Stephen's interest in rehabilitation have been served. If Stephen were again adjudicated delinquent following remand for a new trial, no further interest or purpose would be served. Given the futility of a new trial, we reverse[10] the orders

---

[10] We understand that the court in *Sallie T. v. Milwaukee County DHHS*, 219 Wis. 2d 296, 311–12, 581 N.W.2d 182 (1998), affirmed rather than reversed the erroneously-based decision because of the jurisdictional issue. However, we are not com-

of the trial court without remand and dismiss the adjudication of delinquency, with the instruction that Stephen's DNA sample on file be removed or destroyed.[11]

*By the Court.*—Orders reversed.

pelled to affirm based on a conclusion that the trial court lacks jurisdiction to hold a new trial; we simply note the futility of remand even if a new trial were held.

[11] Because of our holding in this case, Stephen is not required to register as a sex offender and therefore we do not reach the issue of whether 1997 Wis. Act 130 is remedial and subject to retroactive application. If, for whatever reason, his name appears on the sex offender registry or any other official records, we instruct the State to remove it.