# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1075-CR**

Cir. Ct. No. 2015CF2628

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

HECTOR LOZORNIO,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Hector Lozornio appeals the judgment of conviction for three counts of sexual assault of a child and the trial court's denial

of his postconviction motion for a new trial. Lozornio argues that the trial court erred when it admitted other-acts evidence of domestic violence. We conclude that the other-acts evidence was properly admitted, that he is not entitled to a new trial in the interest of justice, and that the evidence was sufficient to support his convictions. We further conclude that Lozornio's remaining arguments were forfeited. Accordingly, we affirm the trial court.

## BACKGROUND

¶2 This case arises out of allegations that Lozornio sexually assaulted his daughter and his daughter's half-sister. According to the criminal complaint, in March 2015, the Milwaukee Police Department was called about allegations that Lozornio had sexually assaulted V.R.'s two daughters, seven-year-old E.L.R., and nine-year-old J.G.R. Lozornio is the father of E.L.R., but not J.G.R.

¶3 The police spoke with V.R. as well as the principal and the school psychologist at the girls' school. The police also conducted forensic interviews of E.L.R. and J.G.R. As a result of the police investigation, Lozornio was charged with three counts of first-degree sexual assault of a child on March 15, 2015.[1] While on bail and under a no-contact order regarding V.R., E.L.R., and J.G.R., Lozornio contacted V.R. by telephone, text, and in person to persuade her not to attend his trial.[2] V.R. and the girls did not appear at Lozornio's scheduled jury

---

[1] The Honorable Daniel Konkol presided over Lozornio's first case; we refer to him as the circuit court.

[2] Lozornio disputes that he was the first to make contact with V.R., but the record is clear that there was contact between them despite the no-contact order imposed on Lozornio. At trial, the State played for the jury recordings of conversations between Lozornio and V.R. that Lozornio recorded on his cell phone on two dates in April 2015.

trial on June 8, 2015, instead, V.R. texted the victim witness advocate that they were unable to make it. As a result of their absences, the State dismissed the charges against Lozornio without prejudice.

¶4 On June 12, 2015, V.R. contacted the victim witness advocate to explain that Lozornio had contacted her while on bail and told her to write a letter recanting her allegations, and they had a plan that V.R. and the girls would not appear at his trial. The police reviewed the text messages between Lozornio and V.R. during the pendency of his case. The State reissued charges against Lozornio on June 12, 2015; the charges against him were first-degree sexual assault, sexual intercourse, of a child under age twelve for assaulting E.L.R. between April and September 2014; first-degree sexual assault, sexual contact, of a child under age thirteen for assaulting E.L.R. between November 27 and December 31, 2014; first-degree sexual assault, sexual contact, of a child under age thirteen for assaulting J.G.R. between November 27 and December 31, 2014; felony bail jumping; and felony intimidation of a witness by a person charged with a felony for dissuading V.R., E.L.R., and J.G.R. from attending his trial.[3]

¶5 Relevant to this appeal, in October 2015, the trial court[4] granted the State's motion to admit other-acts evidence of Lozornio's 2001 conviction of two counts of fourth-degree sexual assault of a thirteen-year-old girl who was babysitting for his family, and two domestic violence incidents: first, in October

---

[3] The State amended the information in November 2015 adding three more counts of felony bailing jumping based on specific instances of contact with V.R.

[4] The Honorable Stephanie Rothstein presided over Lozornio's second case, including trial, sentencing, and postconviction proceedings; we refer to her as the trial court.

2014, V.R. was charged with battery against Lozornio, and second, in February 2015, V.R. reported to police that Lozornio had beaten her.

¶6 The trial court conducted a five day trial in January 2016. The State presented testimony from a former assistant district attorney in the Milwaukee County District Attorney's Office, who testified about Lozornio's guilty pleas for two counts of fourth-degree sexual assault in 2001, and presented an expert on child sexual abuse disclosure, who testified about the timelines and behaviors when children admit sexual abuse happened to them. The State then presented testimony related to the disclosure of the sexual assault: first, the school principal at the school attended by both E.L.R. and J.G.R., who testified that she received a text from a parent at the school concerning potential sexual assaults of the girls; the school psychologist, who testified that she talked to the girls at school after the allegations were made, that E.L.R. told her about her father scrubbing her in the bathtub and that, thereafter, the psychologist contacted child protective services (CPS); the CPS assessment specialist who responded to the call from the school; and the Milwaukee Police Department Sensitive Crimes Division officer who conducted the forensic interviews of E.L.R. and J.G.R. The videos of the forensic interviews were also played for the jury.

¶7 The State then called E.L.R., who testified that one day she was talking a shower with J.G.R., and Lozornio told her sister to get out of the shower, and then Lozornio "touched [her] in the wrong spot, and [she] didn't feel safe." She cried on the witness stand as she recounted that Lozornio's hands were touching her "privates." She confirmed using a diagram that her "privates" referred to her vaginal area and not her anal area. E.L.R. then demonstrated what Lozornio did to her using dolls, showing that the doll was touched between her legs. E.L.R. did not recall Lozornio touching her while she was sleeping.

¶8    The State also called J.G.R., who testified that one night she was sleeping on the floor and Lozornio touched her bottom, which woke her up. J.G.R. said that Lozornio told her that he was trying to move her because she moves a lot when she sleeps and she was by her sister's feet. She did not think he was really trying to move her because "he wasn't even trying to." She stated Lozornio used his hand and touched her over her pajamas. She testified that she knew the difference between good and bad touches and Lozornio's was a "[b]ad touch." She told her mother in the morning, who said "she will go talk to him if he did that and she talked to him in the room and he said 'no.'" J.G.R. testified that Lozornio touched her two times, and stated that "next time he touched [her, her mother] asked him again and he said 'no' and she got a little bit angry." Using dolls, J.G.R. demonstrated how Lozornio touched her bottom. J.G.R. also testified about her mother having bruises or injuries to her face. Additionally, J.G.R. testified about going to Michigan and not going to court last June because Lozornio "told [her] mom not to."

¶9    The State then called V.R., who testified that she had a relationship with Lozornio from which E.L.R. was born in 2007, but she then did not see him again until 2013 and he started staying over at her place regularly around February 2014. She testified about seeing Lozornio in the shower with E.L.R.:

> I went into the bathroom and I seen him showering my baby.
>
> .…
>
> He was on his knees with his hands on her body and she was naked and she was standing right there and she just had this look on her face like she was scared. She couldn't say anything. And I said "What the hell are you doing" to him and he was like "I'm washing my daughter" and I said "Why are you washing her?"

¶10 When V.R. talked to E.L.R. about the incident, E.L.R. complained that Lozornio was rough, and V.R. was afraid to ask for more details because she loved Lozornio at that time and did not "want to believe he would hurt her." She testified that despite trying to have the girls shower together, Lozornio "would still manage to make his way in the bathroom regardless."

¶11 V.R. testified about a domestic violence incident in October 2014, when she called the police, but after interviewing them both, the police arrested her for starting the fight. While she was in jail, Lozornio filed for full custody and placement of E.L.R. V.R. testified about a second domestic violence incident in February 2015, in which they physically fought and Lozornio choked her, pulled her hair, smacked her, and punched her.

¶12 V.R. testified that after that incident, she and Lozornio appeared in family court where Lozornio was granted placement with E.L.R. every other weekend. She denied threatening him with the words, "You're not gonna see your kid again." When V.R. told E.L.R. that she would have to stay with Lozornio on his weekends, E.L.R. started crying and V.R. recounted that E.L.R. said "she didn't want to be alone with him because she had never been alone with him in that amount of time." V.R. told E.L.R. there was nothing she could do and the "only way … that anything would change would be if she said how uncomfortable he made her feel, and that's when she told me, 'Yeah, like then he put his finger in me in the shower'" and V.R. just "stopped[.]" V.R. told E.L.R. that she would need to tell her school about this allegation and V.R. called the school with her concerns the next day.

¶13 V.R. also testified about her contact with Lozornio after he was arrested and released on bail. She explained that Lozornio told her to withdraw

the kids from the Pathfinders therapy program for abused children in which V.R. had enrolled the children because Lozornio said the therapy was "brainwashing" them.[5] She stated that the night before Lozornio's first trial, he pressured V.R. to write a letter recanting the allegations. Lozornio told V.R. that the only way they could be together and he would help her with her new pregnancy with his child, as well as help with housing and finances, was if she and the girls did not go to trial and the charges were dismissed. She testified the Lozornio gave her his car, a new cell phone, and money to move to Michigan instead of appearing at his trial. On her drive, she realized she wanted to do "the right thing" and they returned to Wisconsin, where she soon contacted the victim witness advocate.

¶14 In his defense, Lozornio called his ex-wife and his son. Additionally, Lozornio called Victor Yancey, who testified that he had been in a volatile relationship with V.R. about four years earlier and that she threatened that "if [he] ever betrayed her … she can have the kids easily say [he did] something that he didn't…." Lozornio also called the defense attorney who represented him in various matters, including the child custody matter over placement with E.L.R. in March 2015. He testified that as he and Lozornio walked out of the courtroom past V.R., she said, "I'm going to make sure that you never see that child again."

¶15 The court reported on the record its proposed jury instructions because it had not received "an instructions list or proposed list of instructions from either" party. Relevant here, the jury instruction for other-acts evidence was not requested or included. After the close of evidence and the instructions

---

[5] Later, the State called two therapists from Pathfinders who provide therapy to children who have experienced sexual assault; the first of whom worked with J.G.R., the second of whom worked with E.L.R.

conference, the court confirmed on the record that the parties were satisfied with the jury instructions.

¶16    Multiple times during closing arguments, the State referenced the similarity between these assaults and Lozornio's conviction for sexual assault of a thirteen-year-old babysitter. Lozornio's counsel did not object, but in his closing, he referenced how long ago those assaults were and how it was a "drunken mistake."

¶17    After about two hours of deliberation, the jury found Lozornio guilty of all counts. The trial court sentenced Lozornio as follows: count one—thirty years divided as twenty-five years of initial confinement and five years of extended supervision; count two—seven years divided as four years of initial confinement and three years of extended supervision; count three—five years divided as three years of initial confinement and two years of extended supervision; and counts four through eight—two years divided as one year of initial confinement and one year of extended supervision for each count. The trial court imposed counts two through eight concurrent with count one.

¶18    Lozornio filed a motion for postconviction relief pursuant to WIS. STAT. §§ 974.02 and 809.30 (2019-20)[6] in March 2019. He argued that other-acts evidence related to the domestic violence incidents was improperly presented to the jury because it was not relevant. Second, he argued the other-acts evidence should have been barred by issue preclusion based on the evidentiary ruling by the

---

[6] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

circuit court in Lozornio's June 2015 trial.[7] Third, he asserted the State made improper statements in its opening and closing statements that denied Lozornio his right to due process.[8] Fourth, Lozornio argued that the evidence was insufficient to sustain his convictions for counts one through three. Finally, Lozornio argued a new trial should be ordered under the doctrines of plain error and cumulative error because the State presented prejudicial evidence in its opening statement and the trial court admitted irrelevant other-acts evidence without any limiting instruction to the jury.

¶19 The trial court denied Lozornio's motion without a hearing. It concluded that the other-acts evidence concerning the domestic violence allegations was relevant and properly admitted and that issue preclusion would not apply to the circuit court's previous evidentiary ruling because at Lozornio's January 2016 trial, the trial court did not have a record of the circuit court's reasoning to deny the motion in the first case. Further, the court concluded that

---

[7] In Lozornio's first case, the circuit court denied the State's request to admit other-acts evidence of the same two domestic abuse allegations, determining that this evidence was irrelevant.

[8] In its opening statement, the prosecutor referenced Lozornio's interviews with the police, stating that Lozornio initially denied touching E.L.R., but after some time, he told police that he remembered an incident in May 2014 when he scrubbed between E.L.R.'s legs because "[s]he was dirty" and then he "flipped her around and scrubbed her three times," but Lozornio did not think he "penetrated her." Lozornio did not object contemporaneously to the prosecutor's statements. On the fourth day of trial, the court revisited the issue of playing recordings of Lozornio's three statements to the police. The court found that Lozornio was properly advised of his *Miranda* rights and made a knowing and intelligent waiver. *See Miranda v. Arizona*, 384 U.S. 436 (1966). However, there was "pervasive" discussion of a polygraph test taken by Lozornio interwoven in his second and third statements. Therefore, the court ruled it would not "allow any of those recordings to be played for the jury." It found "that [Lozornio's] second and third [police] questionings are not proper material that should be published to the jury" and it noted, that as a result, the State decided "in a strategic fashion not to pursue publishing the first questioning to the jury." Again, Lozornio did not object to the State's reference to the police statements earlier in the trial.

the new charges constituted a fair basis to reconsider the motion that was previously argued. The court rejected Lozornio's arguments on the prejudice of the prosecutor's opening statement, the sufficiency of the evidence, or any application of plain or cumulative error.

¶20 This appeal follows. Additional relevant facts are included below.

## DISCUSSION

¶21 Lozornio argues that the trial court erred when it admitted other-acts evidence of his prior conviction for fourth-degree sexual assault and domestic violence with V.R. First, he asserts that the doctrine of issue preclusion requires that the evidentiary ruling by the circuit court in his first (dismissed) case should have controlled the admission of the other-acts evidence in his trial. Second, he contends that if issue preclusion did not apply, the trial court erred in its analysis of relevance and unfair prejudice. Third, he argues that the State's references to his 2001 conviction for two counts of fourth-degree sexual assault went beyond the permissible purpose upon which its admission as other-acts evidence was based. Fourth, he contends that the trial court erred when it did not give a cautionary jury instruction with regard to the other-acts evidence. Additionally, Lozornio argues that the State's opening remarks violated his right to due process by referencing and misstating his statements to the police, which were excluded

later in the trial. Finally, he argued that the evidence was insufficient to support his conviction for counts two and three.[9]

¶22 Several of Lozornio's arguments are forfeited on appeal because he did not object at trial or raise the issue to the trial court. We conclude the following issues are forfeited: (1) issue preclusion based on the circuit court's evidentiary ruling;[10] (2) the State's references to the admitted other-acts evidence of Lozornio's 2001 conviction for fourth-degree sexual assault exceeding its permissible purpose;[11] (3) the lack of a cautionary jury instruction on other-acts evidence;[12] and (4) the State's opening remarks that referred to Lozornio's police

---

[9] Although Lozornio challenged the sufficiency of the evidence for count one in his postconviction motion, he does not renew that challenge on appeal. We conclude the issue is abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

[10] Lozornio relies on *State v. Miller*, 2004 WI App 117, ¶19, 274 Wis. 2d 471, 683 N.W.2d 485, to support applying issue preclusion to an evidentiary ruling in a criminal case. The simplest distinguishing factor is that Miller, facing re-issued OWI charges, moved the second trial court to apply the same evidentiary rule from the prior dismissed case. *Id.*, ¶6. In contrast, Lozornio did not object to the trial court, instead waiting until his appeal and thus, forfeited this issue.

[11] A defendant waives "objections to the prosecutor's statement by failing to make a timely motion for mistrial." *State v. Davidson*, 2000 WI 91, ¶86, 236 Wis. 2d 537, 613 N.W.2d 606. The State argues that the only analysis of improper statements by the prosecutor would be under the doctrine of plain error. *Id.*, ¶88. We note that Lozornio raised plain error in his postconviction motion, but has not raised the issue on appeal. We conclude that Lozornio has abandoned that argument and conceded that plain error is not applicable. *See A.O. Smith Corp.*, 222 Wis. 2d at 491.

[12] By statute, the failure to object to jury instructions at the conference after the close of evidence at trial "constitutes a waiver of any error in the proposed instructions or verdict." Wis. Stat. § 805.13(3). Furthermore, our supreme court has explained and clarified that "the court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review." *State v. Trammell*, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564.

11

statements violating his right to process.[13] The "failure to object constitutes a forfeiture of the right on appellate review. The purpose of the 'forfeiture' rule is to enable the [trial] court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." **State v. Ndina**, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. Accordingly, we do not address these arguments on the merits.

¶23 We review Lozornio's surviving claims: the trial court's admission of other-acts evidence, whether his claims make him eligible for a new trial in the interest of justice, and whether there was sufficient evidence for the State to prove counts two and three beyond a reasonable doubt.

### I. Other-acts evidence

¶24 Lozornio argues that the trial court erred when it admitted other-acts evidence of domestic violence incidents between V.R. and himself.[14] The trial court "has broad discretion in determining the relevance and admissibility of proffered evidence." **State v. Oberlander**, 149 Wis. 2d 132, 140, 438 N.W.2d 580

---

[13] Although violation of due process raises constitutional concerns, "[i]t is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the [trial] court, even alleged constitutional errors, generally will not be considered on appeal." **State v. Huebner**, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.

[14] Lozornio does not appear to complain that evidence of his 2001 conviction for fourth-degree sexual assault was inadmissible, only that the State's references exceeded the permissible purpose upon which it was admitted. The record reflects that the trial court analyzed the three prongs and found that the 2001 conviction showed his "method of operation," was "relevant," and was "not unduly prejudicial." The court also determined the "greater latitude" rule was applicable. *See Davidson*, 236 Wis. 2d 537, ¶51 explaining that the greater latitude rule allows for a "more liberal admission" of other-acts evidence in crimes of sexual assault of a child victim). We conclude that the trial court's admission of the 2001 conviction was not an erroneous act of discretion. Having also concluded that this issue was forfeited, there are no surviving issues on appeal stemming from admission of evidence about the 2001 conviction, and therefore, we do not address this issue any further.

(1989) (citation omitted). We review the trial court's decision on the admissibility of "other-acts evidence for an erroneous exercise of discretion." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399. We will not reverse the trial court's "evidentiary ruling if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted). If the trial court fails to set forth a basis for its ruling, we will "independently 'review the record to determine whether it provides an appropriate basis for the [trial] court's decision.'" *Id.* (citation omitted).

¶25 The admission of other-acts evidence is governed by a three-prong analysis set forth in *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). For the first prong, we consider whether the other-acts evidence was "offered for an acceptable purpose … such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" as described in WIS. STAT. § 904.04(2). *Sullivan*, 216 Wis. 2d at 772. For the second prong, we consider whether the other-acts evidence was "relevant" in accordance with WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. The first facet of relevance is "whether the other[-]acts evidence relates to a fact or proposition that is of consequence to the determination of the action." *Id.* The second facet is "whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence." *Id.* For the third prong, we consider whether "the probative value of the other[-]acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of

13

time or needless presentation of cumulative evidence" as examined in WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73.

¶26    In October 2015, the trial court heard the State's motion to admit other-acts evidence of domestic violence between V.R. and Lozornio. The State's motion alleged the following: V.R. called 911 in October 2014 to report that Lozornio hit her; when the police arrived, Lozornio reported that V.R. suspected him of cheating, they head-butted each other, and she slapped him. V.R. admitted to head-butting Lozornio first and biting him because he was cheating on her. No children witnessed the incident. V.R. was charged with battery, but Lozornio failed to appear at trial and the State dismissed the case. V.R. reported that at 3:00 a.m. on February 21, 2015, Lozornio violated the no contact order, slapped and punched her in the face, head, neck, shoulders, and arms, and kicked her knee. V.R. walked to the Milwaukee Police Department District Two and reported the incident on March 2, 2015, on the advice of her criminal defense attorney.

¶27    The State moved to admit the evidence as context and to provide a more complete background of the relationship between V.R. and Lozornio, in accordance with the greater latitude rule and the *Sullivan* analysis as set forth in *Marinez*, 331 Wis. 2d 568, ¶4. *See also State v. Davidson*, 2000 WI 91, ¶51, 236 Wis. 2d 537, 613 N.W.2d 606 (explaining that the greater latitude rule allows for a "more liberal admission" of other-acts evidence in crimes of sexual assault of a child victim). The State argued that the domestic abuse allegations explained the delay in reporting the sexual abuse, showed Lozornio's power and control over V.R., and gave context to the forensic interview video statement of J.G.R., which referenced Lozornio hurting her and her mother.

¶28   The trial court ruled that the domestic violence incidents were admissible because it was "important for the jury to have the entire picture and context of the agreement or of the climate, [and] the relationship between" V.R. and Lozornio. Because the court wanted the jury to "have the full facts" it decided to allow "testimony that [V.R.] was charged with a domestic violence related offense in which Mr. Lozornio was alleged to have been the victim [the October 2014 incident], however, Mr. Lozornio failed to appear and that the case was dismissed for want of prosecution and there was no conviction." The court found it was "important and necessary here that the jury hear the whole facts and everything surrounding this relationship so that they can make an adequate evaluation of the credibility of various witnesses." The court also allowed "the February 21st domestic violence incident as reported to come in," but concurrently, allowed evidence that the incident was not prosecuted or charged.

¶29   The trial court did not analyze the admission of the domestic violence incidents expressly under the *Sullivan* prongs. Therefore, we review the record independently to discern if a basis exists. *Marinez*, 331 Wis. 2d 568, ¶17. There appears to be no dispute that the first prong was satisfied. The State argues it proffered the other-acts evidence for the permissible purpose of providing context to the relationship between V.R. and Lozornio and the household in which the two girls lived and to assist the jury with credibility determinations. "Other-acts evidence is permissible to show the context of the crime and to provide a complete explanation of the case." *State v. Hunt*, 2003 WI 81, ¶58, 263 Wis. 2d 1, 666 N.W.2d 771. We conclude that the trial court reasonably found that the domestic violence incidents provided "context, credibility, and … a more complete background" and, therefore, were offered for a permissible purpose, satisfying the first prong of *Sullivan*. *See Marinez*, 331 Wis. 2d 568, ¶27.

15

¶30    For the second prong, Lozornio argues that the other-acts evidence was not relevant. We review the record on the relevance of the domestic violence incidents. The trial court stated that the jury needed this information to make credibility determinations not only about Lozornio, but also about the girls and V.R. Lozornio argues that the evidence of domestic violence was not relevant because it was not necessary to prove any element of the State's case. That argument fails because it asks us to view the evidence and the charges too narrowly. "A witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01." *Marinez*, 331 Wis. 2d 568, ¶34 (citation omitted). As was noted about child sexual assault cases in *Marinez*, "this case boiled down to whom the jury believed; the child alleging she was sexually assaulted or the defendant who denies it occurred." *Id.* There was no direct or physical evidence of the sexual assaults of E.L.R. and J.G.R. The background and context of the relationship between V.R. and Lozornio was relevant to the credibility of E.L.R. and J.G.R.'s allegations because it informed the jury why the girls would be afraid to disclose the assaults. Furthermore, the domestic violence incidents provided context to Lozornio's charges of three counts of witness intimidation based on V.R. and the girls not attending the first trial. We conclude that the record reflects that the other-acts evidence was relevant, thereby satisfying the second *Sullivan* prong.

¶31    For the third prong, both parties are rather conclusory about the presence or absence of prejudice because of the other-acts evidence. Lozornio argues that the domestic violence incidents could be used by the jury to draw a

16

forbidden inference that he had a propensity to commit bad acts.[15] The State argues that Lozornio does not meet his burden because he fails to explain why the domestic violence incidents were so inflammatory or egregious that the jury would convict him because he was a bad person. The State also points out that the only charged case of domestic violence was brought against V.R. with Lozornio as the victim and that V.R. and Lozornio were having a contentious custody dispute over E.L.R., which may have cut against V.R.'s credibility.[16]

¶32 The burden shifted to Lozornio to show that the unfair prejudice of the domestic violence evidence substantially outweighed its probative value. *See Marinez*, 331 Wis. 2d 568, ¶41. The "probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." *State v. Payano*, 2009 WI 86, ¶81, 320 Wis. 2d 348, 768 N.W.2d 832. Accordingly, "the standard for unfair prejudice is not whether the evidence harms the opposing party's case, but rather whether the evidence tends to influence the outcome of the case by 'improper means.'" *Id.*, ¶87 (citation omitted). Additionally, unfair prejudice results from other-acts evidence that "has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base

---

[15] Lozornio also argues that the trial court could have reduced the risk of prejudice by giving a cautionary jury instruction; however, as discussed above, Lozornio did not request a cautionary instruction and did not object at the instruction conference at trial. Therefore, the issue remains forfeited.

[16] Lozornio relies on two out-of-state cases to argue that competing inferences about the relevance of evidence may cancel each other out or reduce its value to nothing. This argument is underdeveloped and inadequately briefed, and therefore, we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789-90.

¶33    Here, the other-acts evidence was highly relevant to the jury's consideration of credibility for the witnesses and Lozornio himself.  When the trial court admitted the evidence, it informed both counsels that it would "be limiting how much extraneous information" would be explored and it would not let either party "go too far afield."  The record does not reflect that the State used the evidence to inflame the jury or for an improper purpose; Lozornio raises no issues about overruled objections related to the use of this evidence.  Lozornio has failed show that the unfair prejudice of the domestic violence evidence substantially outweighed its probative value, and we conclude that the third prong of the Sullivan analysis was satisfied.  Therefore, having searched the record, we conclude that the trial court's decision to admit the other-acts evidence was not erroneous.

## II.    Interest of justice

¶34    Lozornio argues that this court has discretionary power to correct errors in the interest of justice.  He contends that in light of the questionable relevance of the other-acts evidence, the failure to properly instruct the jury is problematic.  We exercise our discretionary authority to reverse judgment only "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]"  WIS. STAT. § 752.35.  Our discretionary reversal power "should be used only in *exceptional* cases." *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258.

¶35    Lozornio argues that absent a cautionary jury instruction regarding the other acts evidence, we cannot be sure that the jury did not consider the other-

acts evidence for an improper purpose. However as discussed above in the forfeiture of this claim, our supreme court has expressly denied the court of appeals' discretionary authority to reverse judgment in the case of an unobjected-to jury instruction. *See* ***State v. Trammell***, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564. Here, Lozornio failed to request an other-acts evidence instruction and when that instruction was not included at the trial conference on instructions, Lozornio again did not request the instruction or object to its omission. By statute, he waived his objection. *See* WIS. STAT. § 805.13(3). Even if we were to consider this issue, we conclude that the real controversy has been fully tried and Lozornio has not demonstrated that this is an exceptional case.

### III. *Sufficiency of the evidence*

¶36 Lozornio's final argument is that the State failed to present sufficient evidence to support the sexual contact charges, counts two and three. Lozornio argues that inconsistencies between the girls' testimonies about the assault incidents and what they said in their forensic interviews show that the evidence was "thin." The State asserts that inconsistencies in the evidence do not make them insufficient, nor do they undermine the jury's determination.

¶37 "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law," which we review independently. ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. In reviewing the sufficiency of the evidence to support a conviction, we may not substitute our judgment for that of the trier of fact unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found the requisite guilt. *See* ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If more than one

reasonable inference can be drawn from the evidence, we must adopt the inference that supports the verdict. *See id.* at 506-07. We "will uphold the conviction if there is any reasonable hypothesis that supports it." *Smith*, 342 Wis. 2d 710, ¶24.

¶38 "In a prosecution for sexual assault, the State must prove as an element of the crime that the perpetrator had the specific intent to touch the victim for the purpose of sexual arousal or gratification." *State v. Stephen T.*, 2002 WI App 3, ¶13, 250 Wis. 2d 26, 643 N.W.2d 151. Therefore, the State had to prove that Lozornio touched E.L.R. and J.G.R. with the intent to become sexually aroused or gratified. "[T]he State is allowed to prove intent by inference from the defendant's conduct and from the general circumstances of the case." *Id.*, ¶14. Lozornio argues there is no evidence in the record that allowed the jury to draw the conclusion beyond a reasonable doubt that he was sexually aroused or gratified.

¶39 The State argues that evidence was sufficient for the jury to make a reasonable inference that Lozornio intended to touch the girls for sexual gratification. The State contends that the jury could have believed E.L.R.'s statement in her forensic interview, as shown to the jury on video, that she felt her father touching her "privacy" while she was asleep and believed J.G.R.'s statement that she saw Lozornio touching E.L.R. and Lozornio left because he was observed. The State asserts that this circumstance was enough for the jury to infer that Lozornio was touching E.L.R. for sexual gratification because he stopped as soon as he noticed he was being observed. The State argues that the jury could have believed J.G.R.'s statement that Lozornio touched her bottom while she was sleeping and woke her up, told her he was moving her when he saw she was awake, but then denied touching J.G.R. at all when V.R. confronted him. From this, the jury could infer that Lozornio touched J.G.R.'s buttocks while she was

asleep for the purpose of sexual arousal because, he again stopped as soon as she woke up and moreover, he denied doing it at all. Additionally, J.G.R. testified at trial that she knew the difference between a good touch and a bad touch and that Lozornio used a "bad touch."

¶40 It is the jury's job to resolve inconsistencies in testimony and determine the credibility of witnesses. The jury's function as fact-finders allowed it to find the girls' testimony and forensic interviews believable and credible. The girls were not required to testify specifically that Lozornio was aroused or sexually gratified. The jury was permitted to reject Lozornio's reasons for touching the girls. The jury was allowed to consider that Lozornio had been convicted of another sexual assault by this method of operation in the past—and draw the reasonable inference that he had no reason for touching these girls other than for the purpose of sexual gratification or arousal.

¶41 We conclude that there is sufficient evidence for the jury to have found, beyond a reasonable doubt, that the State proved all elements of counts two and three including that Lozornio intentionally had contact with E.L.R. and J.G.R. for the purposes of attaining sexual arousal or gratification.

**CONCLUSION**

¶42 We conclude that Lozornio has failed to show that the trial court erred when it admitted other-acts evidence related to domestic violence incidents, failed to show that we should grant him a new trial in the interest of justice, and failed to show that there was insufficient evidence to support counts two and three. Further, we conclude that Lozornio has forfeited several arguments by not raising objections at trial. Therefore, we affirm his judgment of conviction and the trial court's order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.